*Twenty-fifth Judicial District.*

## In the Court of Quarter Sessions of Clearfield Co.

---

## *In re* JURISDICTION OF ASSOCIATE JUDGES.

　1. In construing the constitution, a comprehensive view of the whole instrument must be taken.　Every part of it must be considered and all its parts made to harmonize if practicable.

　2. The ninth section of the judiciary article of the new constitution, construed in connection with the fifth section of the same article, and the sixteenth and twenty-sixth sections of the schedule, does not presently constitute the judges learned in the law *sole* judges of the courts of oyer and terminer, quarter sessions and orphans' courts.

　3. Associate judges in commission on the first day of January, 1874, continue to hold their respective offices, and it is their right and duty to serve in all the courts as *heretofore*, until the expiration of the terms for which they were elected and commissioned.

Opinion delivered January 13, 1874, by

ELWELL, P. J.　The associate judges of this county being desirous to conform to the provisions of the new constitution, and having heard doubts expressed as to whether, under it, they have jurisdiction as judges of the oyer and terminer, quarter sessions and orphans' courts, have requested my opinion on the subject.　The question thus informally presented, relating as it does to the organization of the court, and consequently to the legality of its proceedings, is of the first importance.　In view of this fact, and of the necessity for an early decision, I have given to the subject such consideration as time would allow, and now state my conclusion, and briefly some of the reasons which have led to it.

Under the constitution of 1838, and the amendment of 1850, associate

judges of the common pleas were, by virtue of their office, judges of the courts above mentioned.    They were elected by the people, and commissioned by the governor for five years.    The commission did not designate the courts of which an associate was judge.    It recited the fact of the election, and commissioned him to be an "associate judge of the county —to have and to hold the said office, together with all the rights, powers and emoluments thereto belonging, or in anywise appertaining."    An office consists in a right and correspondent duty to execute a public trust, and to take the emoluments belonging to it.    (3 Kent's Com. 560; 7 Bac. Abr. 279.)    In Commonwealth *v.* Gamble, 12 P. F. Smith 348, Thompson, C. J., declares that the powers and jurisdiction contained in a commission authorized by the constitution, constitutes the office; that they are the essence of it, and are to be exercised during the whole term therein mentioned.    The principle to be deduced from these authorities is, that when a judge was commissioned, under the old constitution, he became *ipso facto* a judge of all the courts named.    His powers and jurisdiction in each and all of them, constituted *the office* in which he was authorized to serve.

The office of associate judge is not abolished by the constitution of 1874, except in counties which form separate judicial districts, and in these it is expressly provided that the judges shall *serve* for their unexpired terms.    By abolishing the office specially in the separate districts, it is clearly implied that it should continue as to districts composed of more than one county.    But we are not left to ascertain the intention by construction in this instance, for in the sixteenth section of the schedule it is provided that "associate judges not learned in the law, elected *after* the adoption of this constitution, shall be commissioned to hold their offices for the term of five years from the first day of January next after their election.

In Commonwealth *v.* Clark, 7 W. & S. 133, Chief Justice Gibson defined a schedule to a constitution to be "a temporary provision for the preparatory machinery to put the constitution in motion without disorder or collision.    Its use is merely to shift the machine gradually into another track, and having done its office, it was to be stored away in the lumber room of the government."    And this is undoubtedly the general rule, but cannot be applicable to a section in a schedule like that of the sixteenth, which makes a perpetual provision in regard to a judicial office.

What we have to do with now, however, relates to the powers of judges *in office* on the first day of January, 1874, when the new constitution went into operation.    By consulting the schedule again, we find that no sudden and violent action, no disorder or collision was intended. The twenty-sixth section declares that "all persons in office in this commonwealth at the time of the adoption of this constitution, and at the first election under it, *shall hold their respective offices* until the time for which they were elected or appointed shall expire, and until their successors shall be duly qualified, unless otherwise provided by this constitution.    In regard to associate judges it is not otherwise provided for, and therefore

they are not excepted from the general saving clause of the section. But it is supposed that the authority of the associates is entirely abrogated by section ninth, article fifth, of the constitution. It is by that provided, that "judges of the court of common pleas, learned in the law, shall be judges of the courts of oyer and terminer, quarter sessions of the peace, and of the orphans' courts"; and if we were to consider this provision by itself, the conclusion would be irresistible, that judges, other than those learned in the law, were to be excluded from these courts. But in construing a constitution, a comprehensive view of the whole instrument must be taken. Every part is to be considered, and all its parts made to harmonize, if practicable, so as to give a sensible and intelligent effect to each. It is not to be presumed that the framers of a constitution intended that any part of it should be without meaning. (Potter's Dwarris on Statutes and Constitutions, 144, 655.)

In order to ascertain whether this ninth section at once, and perpetually debars associate judges from all jurisdiction except in the common pleas, we turn to the fifth section of the same article five, and there find that although the office is abolished in counties of more than fifty thousand inhabitants, constituting separate districts, yet, as to them, it is expressly provided that "the several associate judges in office when this constitution is adopted shall *serve* for their unexpired term." *Serve* in what courts? In the common pleas only, or as heretofore?

Understood according to its common acceptation, this term "serve" means nothing less than no interruption is intended, but that the powers and jurisdictions heretofore exercised shall continue to be exercised without diminution. This is the meaning which the minds of the people naturally ascribe to it. Courts of justice, in order to arrive at the true intent, must ascribe to the words used in a constitution the meaning of words, which is generally understood as being their meaning.

"Constitutions," says Judge Story, "are not designed for metaphysical or logical subtleties, for niceties of expression, for critical propriety, for elaborate shades of meaning, or for the exercise of philosophical acuteness, or judicial researches. They are instruments of a practical nature, founded on the common business of life adapted to common wants, designed for common use and fitted for common understandings. The people make them; the people must be supposed to read them, with the help of common sense, and cannot be presumed to admit in them any recondite meaning or any extraordinary gloss" (*Story's Com't*; Sec. 451.)

If to serve out their terms of office means, as I have no doubt it does, that the associates in the counties forming separate districts shall continue to perform *all* the functions, and to exercise the same power and jurisdiction as heretofore, then the ninth section cannot go into operation in such districts until the associates have served out their terms. Thus construed, sections five and nine harmonize, and the intended force and effect is given to each.

The necessity for associate judges is much greater in counties where the president judge does not, than where he does, reside. Much of the business in the quarter sessions and orphans' courts, such as road and bridge views, appointments of township and other officers, taking bail and the like; and in the orphans' court, appointing guardians for minors, approving sureties in recognizances, and many other matters require a local knowledge which a non-resident judge cannot have. It is not reasonable to believe that the convention intended by the the ninth section to take from the office of associate judge the power most needed and useful, all and yet to continue the office; or to conclude that there existed an intention to abridge the power and authority of those in districts composed of several counties, where they are most needed, to an extent to render the office of little practical value, and at the same time to allow them in the separate districts where their services are really not much needed, to continue to serve for the time being in all the courts, and to the full extent of their previous power.

In considering the several sections referred to, together with the schedule, I have no difficulty in arriving at the conclusion that, for the time being, the office of associate judge is not, and was not intended to be effected by the constitution. Its continuation as an office, which as we have seen, consists of the powers and jurisdiction granted, was provided for by the twenty-sixth section of the schedule, embracing all the right and power incident under the old constitution, at least until the present terms expire.

Whether after that time the judges learned in the law, are to be the sole judges of these courts, is not now a question before us; before it can arise there will be ample time to give to it full consideration.

What is now decided is this, and this only, that the associate judges of Clearfield county, now in commission, have not only the right, but there rests upon them a corresponding duty to act as judges in the several courts of the county and to perform all the functions of their office as heretofore.